UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| N.Z., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-01106-VKD <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 25, 26 |

Plaintiff N.Z.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq.* The parties have filed cross-motions for summary judgment.[2] The matter was submitted without oral argument.

N.Z. requests that the Court award her benefits, or in the alternative, that the Court remand her case for further administrative proceedings. She argues first that the ALJ erred by finding she constructively waived her right to testify at the hearing. Second, she argues that the Appeals Council improperly rejected additional evidence she submitted for consideration after the ALJ issued a final decision. Although the parties' cross-motions for summary judgment also address

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 10, 12.

several other matters,[3] the Court concludes that it need only address these two issues concerning the ALJ's finding regarding constructive waiver and N.Z.'s submission of additional evidence to the Appeals Council. Because the Court concludes that the ALJ erred by finding N.Z. constructively waived her right to testify, and that the Appeals Council should not have rejected N.Z.'s additional evidence, the Court grants N.Z.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands this matter for further administrative proceedings consistent with this order.

I.  **BACKGROUND**

N.Z. filed applications for disability insurance benefits on May 25, 2017 and supplemental security income on July 10, 2017, when she was 39 years old, alleging that she had been disabled since January 27, 2017 due to depression and anxiety. AR[4] 737, 758. N.Z.'s applications were denied initially and on reconsideration. AR 643, 652. An ALJ held a hearing on February 4, 2019. AR 563. N.Z. did not appear at the hearing, but her representative appeared. AR 565. N.Z. filed a statement explaining her failure to appear on February 25, 2019, AR 926, and requested a supplemental hearing, AR 929. N.Z. attended a consultative psychological examination with Dr. Deepa Abraham on May 23, 2019. AR 1069. The ALJ subsequently issued an unfavorable decision on August 20, 2019. AR 622-631. The ALJ found that N.Z. met the insured status requirements of the Act through September 30, 2022 and that she did not engage in substantial gainful activity since the alleged onset date of January 27, 2017. AR 624. He further found that N.Z. has the following severe impairments: depressive disorder, anxiety disorder, and alcohol abuse disorder. *Id.* However, the ALJ concluded that N.Z. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 625.

The ALJ determined that N.Z. has the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: "N.Z.

---

[3] N.Z. also contends that the ALJ erred in weighing the medical evidence, evaluating medical equivalency, evaluating residual functional capacity, and by rejecting the opinion of a lay witness.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 17.

is limited to simple, routine tasks; simple workplace decisions; and no interaction with the general public." AR 626. The ALJ found that N.Z. is unable to perform past relevant work[5] because the demands of her past relevant work exceed this RFC. AR 629. However, the ALJ found that N.Z. is able to perform other jobs existing in significant numbers in the national economy, including janitorial worker, housekeeper, and dishwasher. AR 631. Accordingly, the ALJ concluded that N.Z. was not disabled, as defined by the Act, from the alleged onset date of January 27, 2017 through the date of the decision. *Id.*

N.Z. requested review of the ALJ's decision on October 18, 2019. AR 709-11. The Appeals Council granted Plaintiff's request and remanded the case on June 9, 2020. AR 639-40. N.Z. attended another consultative psychological examination, with Dr. Laura Jean Catlin, on July 14, 2020. AR 1083. On August 27, 2020, the ALJ issued a final, unfavorable decision in her case.[6] AR 29. Upon receipt of the ALJ's unfavorable decision, N.Z. again requested Appeals Council review on October 23, 2020. AR 734. In connection with that request, N.Z. submitted 355 pages of new evidence. AR 207-562. The Appeals Council denied N.Z.'s request for review. AR 6. N.Z. then filed the present action seeking judicial review of the decision denying her applications for benefits. Dkt. No. 1.

## II. DISCUSSION

### A. Constructive Waiver: Claimant's Testimony at Hearing

N.Z. contends that the ALJ erred by finding that N.Z. constructively waived her right to testify at her hearing. Dkt. No. 25 at 7. N.Z. further argues that the ALJ erred by denying her multiple requests for a supplemental hearing.

On February 4, 2019, the ALJ held a hearing in N.Z.'s case at which N.Z.'s attorney

---

[5] N.Z. has a high school education and prior work experience as a hairstylist and as a bartender. AR 630.

[6] On August 28, 2020, a day after the ALJ's decision, N.Z. apparently filed a request for a favorable on-the-record decision, arguing to the ALJ that N.Z. did not constructively waive her right to appear, that she had good cause for her failure to appear at her hearing, and that her mental conditions and circumstances meet the requirements for a finding of disabled. AR 19-22. In the alternative, N.Z. requested that a new hearing be scheduled in order for her to present testimony in her case. AR 22. It appears that N.Z. had not received the ALJ's final, unfavorable decision when she submitted this request.

3

representative was present without her. AR 565. The Social Security Hearings, Appeals and Litigation Law Manual ("HALLEX") Volume I, Section 2-4-25 instructs the ALJ on how to proceed when a claimant fails to appear. *See* HALLEX I-2-4-25. While HALLEX is an internal Agency manual, with no binding legal effect, this Court finds it persuasive as to these circumstances.[7] *See Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008) ("[A]s an Agency manual, HALLEX is entitled to respect to the extent that it has the power to persuade.") (internal quotation marks and citation omitted). When a claimant's representative appears without the claimant, dismissal of the claimant's request for a hearing is "never appropriate," but the ALJ "may determine that the claimant has constructively waived the right to appear at the hearing if: [1] The representative is unable to locate the claimant; [2] The Notice of Hearing was mailed to the claimant's last known address; and [3] The agency has followed the contact procedures required by 20 CFR 404.938 and 416.1438, as described in HALLEX I-2-3-20." *Id.* at I-2-4-25(D)(2). "If the ALJ finds that the claimant has constructively waived the right to appear at the hearing, the ALJ need not proceed with the hearing and may choose to issue a decision on the record." *Id.* at I-2-4-25(D)(2)(a). In that case, "the ALJ will advise the appointed representative, either on the record during the hearing or in writing thereafter, that he or she will not send a Request to Show Cause for Failure to Appear to the claimant . . . . When done in writing, the ALJ must associate the writing with the record." *Id.*

"If the ALJ finds that the claimant has not constructively waived the right to appear at the hearing, the ALJ may choose to proceed with the hearing . . . . The ALJ will advise the appointed representative that the agency will send a Request to Show Cause for Failure to Appear to the claimant to ask why he or she did not appear at the scheduled hearing and whether a supplemental hearing should be held." *Id.* at I-2-4-25(D)(2)(b). Then, at the end of a short response period, the ALJ must determine whether the claimant has constructively waived their right to appear or whether a claimant has shown good cause for the failure to appear at the hearing. *Id.* In brief, the HALLEX contemplates two options for when a claimant's representative appears at a scheduled

---

[7] In any event, both parties rely on HALLEX in their presentations of the constructive waiver issue.

4

hearing without the claimant:  Either (1) the ALJ enters a finding on the record at the hearing or in writing after the hearing, under section (D)(2)(a); or (2) the ALJ sends a request to show cause for failure to appear to the claimant, under section (D)(2)(b).  Thus, a claimant's failure to appear at a hearing, even when counsel appears on his or her behalf, does not alone act as a waiver of a claimant's right to appear.

Here, the ALJ did not find that N.Z. had constructively waived her right to appear at the hearing on the record under section (D)(2)(a), nor did the ALJ send a request to show cause to N.Z. under section (D)(2)(b).  The hearing transcript indicates that the ALJ and N.Z.'s representative discussed her failure to appear before the ALJ opened the record.  *See* AR 566.  Then, on the record, N.Z.'s attorney indicated he would like to proceed with the hearing and the examination of the vocational expert.  AR 567.  The ALJ responded by noting that "in preparing for the hearing . . . [he] actually saw the need for a post-hearing psychological or psychiatric consultative examination," and that "[t]here is some lack of evidence in the record."  *Id.*  Before closing the record, the ALJ remarked that, if N.Z.'s attorney is able to contact her and believes her testimony would be helpful, the ALJ would "probably be a little more open to a supplemental hearing than usual because I think there's some things that could be helpful to resolve here."  AR 575.  Following the hearing, as the Commissioner concedes, "[b]ecause the ALJ continued with [the] hearing rather than finding immediately that [N.Z.] had constructively waived her right to appear, the ALJ should have sent [N.Z.] a Request to Show Cause for Failure to Appear."  Dkt. No. 26 at 4.  The ALJ did not send any such notice.

Nevertheless, on February 25, 2019, N.Z. submitted a statement explaining her absence.  AR 926.  In her statement, N.Z. wrote:

> In December of 2018 I had my phone and all of my personal effects stolen by someone who had access to my living space. I was distracted trying to recover or replace those items, such as a phone, ID, etc. I forgot the time and place of my hearing and the contact information of my attorney. I have since reconnected with my attorney and would like to testify at a supplemental hearing.

*Id.*  On March 29, 2019, N.Z.'s attorney sent a letter to the ALJ again requesting a supplemental hearing.  AR 929-30.  Plaintiff's counsel wrote, in part, that "[a] supplemental hearing should be

5

scheduled because a timely signed good cause statement was submitted explaining her absence from her hearing. [N.Z.] has not submitted any SSA 773-U4 Waiver of her right to appear and testify at her hearing." *Id.*

Next, N.Z. attended a post-hearing consultative psychological examination with Dr. Deepa Abraham on May 23, 2019. AR 1069. If an ALJ receives additional evidence after a hearing from a source other than a claimant or her representative, the ALJ must proffer the evidence to them. HALLEX I-2-7-1. "When proffer is required, the ALJ will usually offer the claimant an opportunity for a supplemental hearing." *Id.* Thus, after the ALJ received Dr. Abraham's report, he proffered it to N.Z. and her attorney. AR 939-40. In the letter, the ALJ informed N.Z. that she had 10 days to take certain actions, including requesting a supplemental hearing. *Id.* N.Z. concedes that she did not request a supplemental hearing within 10 days of the ALJ's proffer letter, but she argues that this request was unnecessary in light of her two previous requests for a supplemental hearing and that it was error for the ALJ to not grant that request. Dkt. No. 25 at 10.

When determining whether good cause exists for finding a claimant has constructively waived their right to appear, "the ALJ must consider any physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and place of the hearing." HALLEX I-2-4-25(B). "Circumstances that generally establish good cause include 'unforeseeable events' that did not provide the claimant or her representative enough time to notify the ALJ and request a postponement of the hearing." *Golden v. Colvin*, No. 16-CV-05362-MEJ, 2017 WL 4642008, at 10–11 (N.D. Cal. Oct. 17, 2017) (quoting HALLEX I-2-4-25(C)(1)(b)). An ALJ must base his or her decision on the circumstances of each individual case. HALLEX I-2-4-25(B).

On August 20, 2019, the ALJ issued his first unfavorable decision, which did not address whether N.Z. had waived her appearance at her hearing. AR 622-31. N.Z. then requested Appeals Council review of the decision, which was granted. AR 709. In its order remanding the case, the Appeals Council vacated the ALJ's decision and ordered the ALJ to "determine whether the claimant has constructively waived the right to appear at a hearing." AR 639. The Appeals

Council noted that "the claimant sent a letter on February 25, 2019 providing reasons for missing the hearing and requesting a supplemental hearing." *Id.* The Appeals Council further observed that "[o]n March 29, the claimant's representative also requested a supplemental hearing," but the ALJ "did not address these requests or make a finding that the claimant constructively waived her right to appear pursuant to HALLEX I-2-25 D.2."

In the ALJ's second unfavorable decision dated August 27, 2020, the ALJ found that N.Z. constructively waived her right to appear at the February 2019 hearing. AR 28. The ALJ evaluated the prerequisites of HALLEX I-2-25(D)(2) and found them met because, "[t]he claimant received proper hearing notice; the Notice of Hearing was mailed to the claimant's last known address[;] . . . [and] the contact procedures required . . . were also followed." AR 27. The ALJ did not discuss N.Z.'s submitted explanation as to why she was not present at the hearing or her requests for a supplemental hearing.

The Commissioner argues that any error attributable to the ALJ's failure to send a Request to Show Cause was "cured" because N.Z. submitted an explanatory statement. Dkt. No. 26 at 3-5. Further, the Commissioner argues that N.Z.'s purported circumstances, that she was robbed, distracted, and suffering from memory lapse, do not establish a "sufficient nexus" with N.Z.'s absence from the hearing. *Id.* at 4.

On this record, the Court finds that it was legal error for the ALJ to conclude that N.Z. constructively waived her right to appear at the hearing. As the Commissioner concedes, the ALJ should have sent a Request to Show Cause to N.Z. following the hearing. And as the Appeals Council notes, after N.Z. submitted an explanation on her own accord, the ALJ did not "make a finding that the claimant constructively waived her right to appear pursuant to HALLEX I-2-25 D.2." AR 639. Moreover, the ALJ failed to address whether the circumstances stated in N.Z.'s explanation constituted good cause for failing to appear. N.Z. says that her distraction due to a robbery and her memory impairment prevented her from attending the hearing, and she argues that these factors are the kind of mental factors that constitute good cause for missing a hearing. Dkt. No. 25 at 9-10. The ALJ erred in ignoring N.Z.'s explanations for failing to appear at the hearing. *See Golden*, No. 16-CV-05362-MEJ, 2017 WL 4642008, at 10–11 (finding error where ALJ failed

7

to evaluate whether circumstances presented good cause for plaintiff's absence from hearing). Moreover, the Court notes that N.Z. made multiple requests for a supplemental hearing that the ALJ appears to have ignored.  In particular, N.Z. specifically requested a supplemental hearing before service of the ALJ's proffer letter; the ALJ did not acknowledge or respond to this request, and did not convene a supplemental hearing.  Where due process concerns are at stake, as they are here, the Court finds that, in these circumstances, remand is necessary.  *See Cooper v. Saul*, No. 19-CV-06635-VC, 2020 WL 5748725, at *2 (N.D. Cal. Sept. 25, 2020) ("[R]egardless of what HALLEX may or may not permit, the government must ensure that a denial of benefits comports with due process. . . . [I]n light of [the plaintiff's] psychiatric condition, the 'constructive waiver' may have amounted to a failure on the ALJ's part to give [the plaintiff] a meaningful opportunity to be heard."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) ("The Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims."); *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) ("It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied.").

### B.     Additional Evidence Submitted to Appeals Council

N.Z. next argues that the Appeals Council improperly rejected additional evidence she submitted for consideration after the ALJ rendered his decision.  As discussed above, the ALJ issued his final decision following the Appeals Council remand on August 27, 2020, affirming his unfavorable decision issued on August 15, 2019 and concluding that N.Z. was not disabled from January 27, 2017 through the date of his decision.  AR 27-29.  N.Z. again asked the Appeals Council to review the ALJ's decision and submitted additional evidence in support of her claims. The additional evidence consists of over 300 pages of treatment records from the Permanente Medical Group, the majority of which pre-date the ALJ's decision (i.e., August 3, 2017 through August 7, 2020).  AR 207-399.  Other records post-date the ALJ's decision (i.e., September 1 through November 5, 2020).  AR 400-562.

In its decision denying N.Z.'s request for review, the Appeals Council stated that the additional evidence pre-dating the ALJ's decision "does not show a reasonable probability that it

1 would change the outcome of the decision." AR 7. As for records post-dating the ALJ's decision,
2 the Appeals Council explained that "[t]he [ALJ] decided your case through August 27, 2020. This
3 additional evidence does not relate to the period at issue. Therefore, it does not affect the decision
4 about whether you are disabled beginning on or before August 27, 2020." *Id.* N.Z. argues that the
5 Appeals Council is incorrect on both counts.[8]

### 1. Pre-Decision Evidence

The Appeals Council must consider "new and material evidence" if the evidence "relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). "Evidence is new if it is not duplicative or cumulative." *Baker v. Colvin*, No. 16-cv-771 (EMC), 2016 WL 5869944 at *3 (N.D. Cal. Oct. 7, 2016) (citation omitted). "Evidence can also be new if not available when the ALJ made [his] decision." *Id.* "Evidence is material if it relates to the claimant and if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* (internal quotations and citation omitted).

N.Z. submitted additional evidence of treatment notes from visits with treating psychiatrists and therapists that occurred during the period before the date of the ALJ's decision. The notes describe diagnoses and reports of depression, mood disorder, borderline personality disorder, PTSD, and alcohol abuse disorder. *See, e.g.*, AR 265, 299. The notes also describe medications (e.g. lorazepam, lamotrigine, quetiapine, mirtazapine) N.Z.'s treating physicians prescribed to address symptoms of anxiety, anhedonia, decreased energy, poor concentration, mood swings, flashbacks, insomnia, and hopelessness. AR 220, 222, 224, 241, 296-97. Importantly, the notes additionally describe limitations N.Z. experiences in areas of her mental functioning, including her ability to interact with others, her ability to concentrate, persist, or maintain pace, and her ability to adapt and manage herself. AR 215, 227, 238-39, 242, 251-52, 255, 264-65, 296, 312.

The Commissioner does not argue that the additional evidence is not new. *See* Dkt. No. 26

---

[8] N.Z. also argues that the Appeals Council failed to note or review approximately 25 pages of the additional evidence N.Z. submitted, apparently dating from 2017. Dkt. No. 25 at 12.

at 12. Instead, the Commissioner principally argues that it is not material, such that even if the ALJ were to consider the additional evidence, the ALJ's decision would be unchanged because the new treatment records are consistent with the ALJ's findings of only moderate functional limitations. *Id.* N.Z. argues that these records provide a "consistent, in-depth view of [N.Z.'s] diagnoses and treatment," and she argues that the records are an "evidentiary foundation" for the opinions of consultative psychologists Dr. Abraham, AR 1069-82 and Dr. Catlin, AR 1083-92. Dkt. No. 25 at 13-15.

The Court agrees with N.Z. that the additional evidence is material. As noted above, both Drs. Abraham and Catlin found that N.Z. has multiple marked functional impairments. *Id.* The ALJ found both of their opinions unpersuasive because the opinions were "inconsistent with the longitudinal record." AR 28, 629. But, as N.Z. observes, when the ALJ made his persuasiveness finding, he did not have the additional evidence documenting the limitations N.Z. experiences in interaction, concentration, and self-adaptation. For example, the records document that N.Z.'s history of abuse causes her anger and that she experiences "frequent rage attacks." *See, e.g.*, AR 215, 264, 296. The records also reflect observations from several practitioners that N.Z. experiences difficulty focusing and an impaired ability to finish projects or manage her time. *See, e.g.*, AR 227, 238-39, 242 (attention: distractible), 252, 255 (trouble concentrating nearly every day), 265, 312. Likewise, the new treatment notes indicate N.Z. exhibits poor impulse control and ability to adapt or manage herself. *See, e.g.*, AR 239, 242 (impulse control: marginal), 251 ("reports reacting impulsively in self-damaging ways"), 296 ("life long symptoms of chronic affective dysregulation associated with early life trauma"). The additional evidence generally appears to support the opinions of Drs. Abraham and Catlin, and thus, consideration of the additional evidence could have changed the ALJ's assessment of their opinions.

### 2. Post-Decision Evidence

As for the additional evidence that post-dates the ALJ's decision, the Commissioner says only that "to the extent [these records] show increased mental difficulties, they would be relevant to a subsequent application of benefits because they deal with a different time period." Dkt. No. 26. N.Z. argues that the records are relevant because they relate to the period before the

10

ALJ's decision. *See* Dkt. No. 25 at 15-16. "Evidence dated after an ALJ's decision can still be related to the period before the ALJ's decision." *Baker*, No. 16-cv-00771-EMC, 2016 WL 5869944, at *4 (citing cases). "This includes records addressing treatment for 'the same kinds of impairments for which [a claimant] was treated before the ALJ's decision' and treatment for ongoing impairments." *Jesus M. G. R. v. Kijakazi*, No. 10-cv-07426-DMR, 2021 WL 4243387, at *4 (N.D. Cal. Sept. 17, 2021) (quoting *Baker*, 2016 WL 5869944 at *5); *accord Y.F.L. v. Kijakazi*, No. 20-CV-04892-VKD, 2021 WL 5998442 (N.D. Cal. Dec. 20, 2021).

Here, the post-decision records include treatment notes from September 2020, immediately after the ALJ's decision, documenting N.Z.'s efforts to obtain treatment for anxiety and PTSD and a psychologists' diagnosis that N.Z. suffers from PTSD with dissociative symptoms and depressive disorder. The post-decision records also include treatment notes from November 2020, when a psychiatrist diagnosed N.Z. with trauma and stressor related disorder and borderline personality disorder. *See* AR 404, 410, 523. The treating practitioners noted that N.Z. has symptoms of anxiety, hypervigilance, anhedonia, insomnia, depressed mood, hopelessness, decreased concentration, appetite change, and decreased energy. AR 411, 448, 524. These symptoms and diagnoses are the same as those at issue before the ALJ's final decision. Given the proximity in time to the ALJ's decision, they might be considered related and material in the sense that they appear to reflect a continuation of the same disorders and symptoms at issue in the ALJ's decision persisting immediately following that decision, even though the records were made after that decision issued. *See, e.g.*, *Jesus M. G. R.*, 2021 WL 4243387 at *4 (finding that plaintiff's additional evidence that post-dated the ALJ's decision was related to the period before the decision because the records showed ongoing treatment for conditions and related symptoms documented in records pre-dating the ALJ's decision); *Y.F.L.*, No. 20-CV-04892-VKD, 2021 WL 5998442, at *4 (same).

While it is not clear whether or to what extent these records might bear on the ALJ's findings about persuasiveness, the records should have been evaluated for that purpose, even though they post-date the ALJ's decision by up to three months. *See Jesus M. G. R.*, No. 10-cv-07426-DMR, 2021 WL 4243387, at *4; *Baker*, No. 16-cv-00771-EMC, 2016 WL 5869944, at *4;

11

*Tammy B. v. Saul*, No. 18-CV-07701-SI, 2020 WL 1914819, at *15 (N.D. Cal. Apr. 20, 2020).

## III. CONCLUSION

For the foregoing reasons, the Court remands this case for further proceedings consistent with this order. On remand, the ALJ shall hold a supplemental hearing at which N.Z. is given the opportunity to testify, and the ALJ shall consider whether N.Z. is entitled to benefits in light of the additional evidence submitted to the Appeals Council.

Accordingly, the Court grants N.Z.'s motion for summary judgment and denies the Commissioner's motion for summary judgment. The Clerk of the Court shall enter judgment and close this file.

**IT IS SO ORDERED.**

Dated: March 29, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

12